[Cite as *State v. Cox*, 2026-Ohio-3072.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
RICHLAND COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO, | Case No. 2025 CA 0105 |
| Plaintiff - Appellee | Opinion & Judgment Entry |
| -vs- | Appeal from the Court of Common Pleas of Richland County, Case No. 2025 CR 0282 R |
| MICHAEL JACOB COX, | |
| Defendant - Appellant | Judgment:   Affirmed in Part and Reversed in Part; Case Remanded for Resentencing |
| | Date of Judgment:  August 10, 2026 |

BEFORE: William B. Hoffman, Craig R. Baldwin, and David M. Gormley, Judges

APPEARANCES: Jodie M. Schumacher (Richland County Prosecuting Attorney) and Michelle A. Fink (Assistant Prosecuting Attorney), Mansfield, Ohio, for Plaintiff-Appellee; Wesley A. Johnston, Medina, Ohio, for Defendant-Appellant.

*Gormley, J.*

{¶1}    Appellant Michael Cox was found guilty by a jury on five felony charges of retaliation.  He now appeals, arguing that the State presented insufficient evidence to support the retaliation charges and that his convictions on those charges were inconsistent with the manifest weight of the evidence.  Cox argues, too, that his trial counsel was ineffective for not pursuing a defense based on an unidentified medical condition.  We find no error with the evidence presented at the trial or with defense counsel's representation of Cox, and we therefore affirm the convictions.

{¶2}    Cox also challenges the adequacy of the trial court's explanation for that court's decision to impose consecutive prison terms in the case.  We agree with Cox that the trial

court failed to make the required findings at the sentencing hearing for imposing consecutive prison terms, so we remand the case for resentencing.

**The Key Facts**

{¶3}    Cox was placed under community-control supervision in 2022 in a separate felony case in Richland County. While he was under supervision, Cox sought and was given permission by the trial judge to travel to Florida. The court order granting that travel request indicated that Cox was to report to his probation officer immediately upon his return to Ohio.

{¶4}    When Cox did not report as ordered, he was arrested and placed in the county jail in August 2024 to await a hearing on the possible revocation of his community-control status. While Cox was in the jail, his assigned probation officer listened to some phone conversations between Cox and other persons outside the jail. (Evidently, phone calls between jail inmates in Richland County and persons outside the jail are recorded, and jail inmates are informed about this practice each time they place a call using the jail's phone system.)

{¶5}    In multiple phone calls, Cox made statements indicating that he intended to cause physical harm to the probation officer, and Cox also made a statement about causing physical harm to the magistrate who had set the bail amount in his case.

{¶6}    Those phone-call statements by Cox prompted the county grand jury to indict him on five third-degree-felony charges of retaliation. After a jury found Cox guilty on those charges, he was sentenced to prison terms on each of them, with some of the prison terms to be served consecutively.

## Cox's Convictions Were Supported by Sufficient Evidence

{¶7} Cox first argues that the State failed to present sufficient evidence to support his convictions on the retaliation charges.

{¶8} "When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed but, rather, whether the evidence, 'if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Pountney*, 2018-Ohio-22, ¶ 19, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "'The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Howell*, 2020-Ohio-174, ¶ 28 (5th Dist.), quoting *Jenks* at paragraph two of the syllabus. A "verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

{¶9} To prove each R.C. 2921.05(A) charge of retaliation, the State was required to introduce evidence that Cox "purposely and . . . by unlawful threat of harm to any person or property . . . retaliate[d] against a public servant . . . who was involved in a civil or criminal action or proceeding because the public servant . . . discharged [his or her] duties." Elected and appointed officers, employees, and agents of the state or any political subdivision are included in the definition of "public servant." R.C. 2921.01(A). And a person acts "purposely" when "it is the person's specific intention to cause a certain result" or when he or she intentionally engages in prohibited conduct. R.C. 2901.22(A).

{¶10} In Cox's view, the State's evidence was insufficient because he made the alleged threats during phone conversations with his girlfriend and another woman and did not

communicate the threats directly to either the probation officer or the magistrate. Yet the retaliation statute "does not require that any threat of harm be communicated directly to the person threatened by the person doing the threatening." *State v. Farthing*, 146 Ohio App.3d 720, 724 (2d Dist. 2001). If "'the defendant was either aware that the threats would be communicated to the intended victim by the third person or could reasonably have expected the threats to be so conveyed,'" the "unlawful threat of harm" required by R.C. 2921.05 is met. *Id.*, quoting *State v. Lambert*, 1998 Ohio App. LEXIS 2383, *11–12 (2d Dist. Jun. 5, 1998).

{¶11} Cox's communications were made on a recorded phone line within the jail. A corrections officer who works at the jail testified at the trial that inmate phone calls (other than those between inmates and their counsel) are recorded. In the recordings played for the jury, an automated message could be heard advising the inmate that the "call will be recorded and subject to monitoring at any time." The corrections officer testified that not only can he listen to the calls at any time, but so can other jail employees, probation officers, and staff in the county prosecutor's office.

{¶12} The State introduced four recordings of jail calls between Cox and either his girlfriend or another female. In a phone call on August 26, 2024, Cox stated that he was going to ruin the probation officer's life and that the probation officer had it coming. Cox even said, "you hear me [probation officer's last name]," seemingly acknowledging that the probation officer might be listening to the recorded call. In a phone call on September 1, 2024, Cox stated that his probation officer had it out for him and saying that he intended to murder that officer if anything else happens. Again, appearing to acknowledge that the phone calls are recorded, Cox said "record that too."

{¶13} In a different September 1, 2024 phone conversation with someone else, Cox acknowledged that if anyone in the county listens to the recordings of the phone calls, Cox himself will "be catching more charges." When the woman with whom Cox was speaking asked him what improper statements he had made, Cox indicated he had said that if he was not able to leave the jail, he intended to murder his probation officer. Cox then insulted both the probation officer and the probation officer's mother. And in a September 6, 2024 phone call to his girlfriend, Cox stated that he was unsure which house he would visit first — the probation officer's or the magistrate's — but added that "I'm going for one of them, I promise." Cox then said he would burn down the magistrate's house "with her [expletive] kid in it."

{¶14} Although Cox did not communicate any of these statements directly to the probation officer or the magistrate, his threats were not made in truly private communications either. A recorded message advised Cox at the beginning of each call that his conversation would be recorded and was subject to monitoring at any time. Cox acknowledges several times during the calls that he is aware that his conversations were being recorded and that the probation officer whom he was threatening likely would hear the threats. Indeed, as we noted above, Cox can be heard on one of the recordings directly addressing the probation officer by his last name. On another recording, after Cox threatened to murder the probation officer, he stated "record that too." And on yet another recording, Cox stated that if anybody in the county listened to the phone calls, then more criminal charges would be coming Cox's way.

{¶15} By communicating the threats during recorded phone calls from the county jail, Cox should have expected that the threats would either be heard by or conveyed to the probation officer and the magistrate. *See State v. Myers*, 2016-Ohio-223, ¶ 19 (6th Dist.) (a

defendant charged with retaliation for statements made during a jail phone call could reasonably have expected that his call was monitored and his threats would be relayed where signs were posted by the phones alerting inmates that the calls were recorded, an automated recording on the call reminded inmates that their calls were recorded, and the defendant's own mother reminded him during the conversation that calls were recorded); *State v. Reyes*, 2010-Ohio-4712, ¶ 11 (6th Dist.) (a defendant who had signed a waiver of confidentiality for conversations with a mental-health professional and who conveyed to that person a threat against a law-enforcement officer could reasonably have expected that the threat would be relayed to that officer); *State v. Webb*, 2000 Ohio App. LEXIS 3493, *10 (2d Dist. Aug. 4, 2000) (sufficient evidence was presented that a defendant intended a threat to be conveyed to a magistrate where that threat against the magistrate was communicated to a deputy clerk).

{¶16}　After reviewing the record, we conclude that the State produced evidence touching on each element of each of the five charges, so we decline to overturn the convictions based on an alleged insufficiency in the evidence.

## Cox's Convictions Were Not Against the Manifest Weight of the Evidence

{¶17}　In his second assignment of error, Cox contends that his convictions for retaliation were against the manifest weight of the evidence.

{¶18}　In determining whether a conviction was against the manifest weight of the evidence, an appellate court acts "as a 'thirteenth juror,' and after 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be [reversed] and a new trial ordered.'" *State v. Hane*, 2025-Ohio-120, ¶ 20 (5th Dist.), quoting *State v. Thompkins*,

78 Ohio St.3d 380, 387 (1997). The reversal of a conviction on manifest-weight grounds should occur only in "the 'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

{¶19} "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them.'" *Thompkins* at 387 (emphasis in original). "[A]n appellate court will leave the issues of weight and credibility of the evidence to the factfinder, as long as a rational basis exists in the record for its decision." *State v. Sheppard*, 2025-Ohio-161, ¶ 66 (5th Dist.).

{¶20} The relevant portions of the four recorded phone conversations were played at the trial, and the complete recordings were provided to the jurors for their review. The jury was able to listen to what Cox said, and from that evidence jurors could weigh whether Cox conveyed threats of harm to the probation officer and the magistrate for performing their public duties.

{¶21} The State also presented the testimony of the probation officer and the magistrate about whom Cox spoke in the recorded calls. The probation officer — who testified that he routinely monitors the phone calls of his probationers when they are in the jail — told jurors that he believed Cox was threatening him with physical harm in the calls. And the magistrate who had presided over Cox's bail hearings testified that she took Cox's threats seriously and was very concerned about her own and her son's safety.

{¶22} After thoroughly reviewing the entire record, and after weighing the evidence and all reasonable inferences that could be drawn from it, we conclude that the jury did not lose its way. Guilty verdicts on the charges of retaliation were supported by the evidence, and we see nothing in the record suggesting that the verdicts were incorrect or that a manifest miscarriage of justice has occurred. This is not the "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, 78 Ohio St.3d at 387.

## Cox's Trial Counsel Was Not Ineffective

{¶23} Cox next argues that his trial counsel was ineffective for failing to pursue a defense based on some unspecified medical condition for which Cox allegedly took medication before he was arrested. Defense counsel was also ineffective — according to Cox — for not playing the recordings of the phone calls for him prior to trial.

{¶24} To establish ineffective assistance of counsel, a criminal defendant must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

{¶25} In evaluating a trial lawyer's performance, we apply a strong presumption that his or her conduct falls within the wide range of reasonable professional assistance. *State v. Epling*, 2023-Ohio-418, ¶ 67 (5th Dist.). Generally, tactical or strategic trial decisions — even if they prove unsuccessful — do not constitute ineffective assistance of counsel. *State v. Hardman*, 2024-Ohio-300, ¶ 39 (5th Dist.).

{¶26} Cox makes a vague reference to an undisclosed medical condition for which he was not receiving medication while he was in the county jail. Cox suggests that his trial

counsel should have hired an expert to investigate whether not receiving his medication provided a defense to the criminal charges.

{¶27} Ineffective assistance of counsel is not established when a defendant's argument "is based entirely upon speculation that such a witness exists . . . [or] what the testimony of such a witness would be." *State v. Jones*, 2003-Ohio-4518, ¶ 13 (9th Dist.). "[D]ebatable trial tactics do not establish ineffective assistance of counsel." *State v. Hoffner*, 102 Ohio St.3d 358, 365 (2004). The decision not to request an expert can be considered a "debatable trial tactic," that "does not amount to ineffective assistance of counsel." *State v. Snyder*, 2009-Ohio-2473, ¶ 32 (5th Dist.).

{¶28} Cox's trial counsel pursued the strategy of arguing that Cox was understandably frustrated while he was in the jail for an alleged community-control violation and was unable to post the bail set by the magistrate, and the lawyer urged jurors to conclude that Cox never intended for the probation officer and magistrate to hear what was said during the phone calls. Although this strategy was not successful, we cannot say that trial counsel was ineffective for pursuing it. And Cox's assertion that additional evidence or different arguments would have led to a more favorable outcome is nothing more than speculation. *See State v. Whitman*, 2019-Ohio-377, ¶ 22 (5th Dist.) (an ineffective-assistance claim fails where the defendant does not explain how trial counsel's failure to present testimony prejudiced the trial or would have changed the outcome).

{¶29} And other than briefly mentioning that he did not hear all of the recorded phone calls prior to trial, Cox offers no support for his view that he was harmed by not hearing before the trial the recordings of the phone calls that he himself had made. Cox's counsel agreed with the State at the trial that the male voice on the recordings was indeed Cox's. And Cox

does not claim on appeal that the voice on the recordings was not his. We see no reason why trial counsel could be considered ineffective for not playing all of the recordings for Cox prior to trial.

**The Sentence Was Contrary to Law**

{¶30} Cox's final assignment of error challenges the trial court's imposition of consecutive sentences.

{¶31} R.C. 2953.08(G)(2) allows this court to undo a felony sentence if and only if "clear[ ] and convincing[ ]" proof indicates either that the trial court's sentencing-related findings are not supported by the record or that the sentence is "otherwise contrary to law." The Supreme Court has explained that "[t]he plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record." *State v. Gwynne*, 2023-Ohio-3851, ¶ 5 (Kennedy, C.J., with two justices concurring in the opinion and one justice concurring in the judgment).

{¶32} Cox argues that the record in this case does not support the trial court's decision to impose consecutive prison terms. We agree.

*Cox's Failure to Object in the Trial Court to the Sentence Imposed There Limits Our Review of That Sentence Here*

{¶33} Before we turn to the merits of Cox's argument, we note that Cox did not object at the sentencing hearing once the trial judge announced the sentence. That misstep now poses a significant hurdle for him because, as we reiterated just last year, "[a]n error 'that was not called to the attention of the trial court at a time when the error could have been avoided or corrected by the trial court' is deemed forfeited absent plain error." *State v. Bright*, 2025-Ohio-725, ¶ 7 (5th Dist.), quoting *State v. Haudenschild*, 2024-Ohio-407, ¶ 15 (5th Dist.). *See*

*also* Crim.R. 52(B) and *State v. Whitaker*, 2022-Ohio-2840, ¶ 166 ("because Whitaker failed to object to the imposition of consecutive sentences at the sentencing hearing, he has forfeited this issue, absent plain error").

**{¶34}** After the trial judge announced the sentence in this case, the judge asked Cox, as well as his trial attorney and the State, whether there were any questions or any other matters that needed to be addressed. Cox stated that his trial attorney would be able to answer any of his questions, and no alleged error concerning the imposition of consecutive sentences was brought to the trial judge's attention. In light of the fact that Cox was given "a meaningful opportunity to express the concerns that [he] now raises here," and because Cox did not object to the sentence imposed, we review his sentence solely for plain error. *Bright* at ¶ 9.

### The Trial Court's Failure at the Sentencing Hearing to Make the Required Findings for the Imposition of Consecutive Sentences Constitutes Plain Error

**{¶35}** "To constitute plain error, an error 'must be on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection.'" *Id.* at ¶ 10, quoting *State v. Dunlap*, 2004-Ohio-6652, ¶ 34 (8th Dist.). "'Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**{¶36}** When imposing sentences on multiple charges, a trial court should start with the presumption that any prison term should be imposed concurrently with any other prison term, unless certain circumstances listed in R.C. 2929.41(A) apply. *State v. Jones*, 2024-Ohio-1083, ¶ 11. A trial court may require a criminal defendant to serve sentences consecutively if the court finds that consecutive sentences are "necessary to protect the public from future

crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public" and that one of the findings in R.C. 2929.14(C)(4)(a)-(c) applies. *Id.*, quoting R.C. 2929.14(C)(4).

{¶37} "'[T]he record must contain a basis upon which a reviewing court can determine that the trial court made the findings required by R.C. 2929.14(C)(4) before it imposed consecutive sentences.'" *State v. Johnson*, 2024-Ohio-5274, ¶ 14 (5th Dist.), quoting *State v. Bonnell*, 2014-Ohio-3177, ¶ 28. The trial judge must make the findings at the sentencing hearing and must incorporate those findings into the sentencing entry, but the trial court "has no obligation to state reasons to support its findings." *Bonnell* at ¶ 37. When a trial court fails to make the findings required by R.C. 2929.14(C)(4), the sentence imposed is contrary to law. *Id*. at ¶ 34.

{¶38} At the sentencing hearing, the trial judge found that Cox was being held in the county jail for an alleged violation of his community-control obligations when he committed the offenses at issue in this case. This finding satisfies R.C. 2929.14(C)(4)(a), which allows a trial judge to impose consecutive sentences when at least one of multiple offenses was committed while the defendant was under a community-control sanction or while that defendant was on post-release control for a prior offense.

{¶39} In the sentencing entry, however, the trial judge included some findings that the judge had not stated at the sentencing hearing. For instance, the judge said nothing at the sentencing hearing about consecutive sentences being "necessary to protect the public from future crime or to punish the offender," and the judge did not say that consecutive sentences would not be "disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." R.C. 2929.14(C)(4). Also missing at the sentencing hearing

is a finding that Cox's "history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." R.C. 2929.14(C)(4)(c).

**{¶40}** Although a presentence investigation was conducted by the trial court's probation staff, and though the resulting presentence report was reviewed by the trial judge and by counsel for both parties before the sentencing hearing, the trial judge did not summarize or quote from the presentence-investigation report on the record at the sentencing hearing. That report might have outlined a criminal history that supported a finding under R.C. 2929.14(C)(4)(c), but the trial judge did not recount Cox's prior convictions or make any finding that Cox's criminal history warranted the imposition of consecutive sentences.

**{¶41}** Consecutive sentences could have been imposed solely upon a finding that Cox committed the offenses at issue in this case while under a community-control sanction — without any consideration of Cox's criminal history — if the trial judge had made the additional required findings that consecutive sentences were "necessary to protect the public from future crime or to punish [Cox]" and that consecutive sentences would not be "disproportionate to the seriousness of [Cox's] conduct and to the danger [Cox] poses to the public." R.C. 2929.14(C)(4). But the trial judge's failure to make these findings at the sentencing hearing renders Cox's sentence contrary to law. *See State v. Hunter*, 2015-Ohio-3498, ¶ 15 (5th Dist.) ("We are unable to uphold the consecutive sentences on this record because we cannot discern that the trial court engaged in the correct analysis") (quotations and citation omitted).

**{¶42}** Having found that the trial court's failure to make the required consecutive-sentencing findings at the sentencing hearing constitutes plain error, we reverse the trial court's judgment and remand the case for a new sentencing hearing.

{¶43}   For the reasons explained above, the judgment of the Court of Common Pleas of Richland County is affirmed in part and reversed in part, and the case is remanded for resentencing.  Costs are to be paid by Appellant Michael Cox.

By: Gormley, J.;

Hoffman, P.J. and

Baldwin, J. concur.